**UNITED STATES BANKRUPTCY COURT**
**FOR WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Case No. 23-30242-cgb |
| J.A.R. CONCRETE, INC. | § | |
| d/b/a J.A.R. Construction, Inc., | § | |
| | § | Chapter 7 |
| Debtor. | § | |
| | § | |
| CAMINO REAL REGIONAL MOBILITY AUTHORITY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Adversary No. _____ |
| v. | § | |
| | § | |
| RONALD E. INGALLS, | § | |
| solely in his capacity as Chapter 7 Trustee | § | |
| for the estate of J.A.R. CONCRETE, INC. | § | |
| d/b/a J.A.R Construction, Inc. | § | |
| | § | |
| Defendant. | § | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

The Camino Real Regional Mobility Authority ("CRRMA") contracted with J.A.R. Concrete, Inc. d/b/a J.A.R. Construction, Inc, ("JAR") to construct the Pellicano Drive Widening Project (the "Project") in March of 2020. In accordance with the parties' contract, CRRMA declared JAR to be in default in December 2022 and made demand on the performance bond for the surety to complete the project. JAR disputes the propriety of the default declaration, and so the surety has refused to fulfill its obligations under the performance bond. This has left the CRRMA and the project in legal limbo, which is highly problematic for El Paso citizens that live or work in that area. The project remains only forty-seven percent complete after almost four years after commencement of

1

construction activities; it is an eyesore, and worse, it is causing significant traffic congestion and impacting commercial development. Therefore, in accordance with 28 U.S.C. § 2201 (the "Declaratory Judgment Act"), Section 105 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 7001(9) and 7001(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules" or "FRBP"), and prior order of this Court, CRRMA asks the Court to construe the parties' contract, the limited facts surrounding the default determination, and applicable law, so that construction activities can once again commence on the Project for the benefit of the citizens of El Paso.

## PARTIES

1. CRRMA is a Texas regional mobility authority and political subdivision of the State of Texas authorized under Chapter 370 of the Texas Transportation Code (the "Transportation Code"). TEX. TRANS. CODE ANN. §§ 370.001 *et seq*. According to Section 370.031, the Texas Transportation Commission (the "Commission") may establish a regional mobility authority like CRRMA at the request of a county and/or certain local municipalities "for the purposes of constructing, maintaining, and operating transportation projects in a region of this state [Texas]." *Id.* § 370.031(a). CRRMA was created in 2007 under this statute at the request of the City Council of the City of El Paso ("El Paso").

2. Mr. Ronald E. Ingalls (the "Trustee") is the duly appointed Chapter 7 trustee for the bankruptcy estate of JAR in the Chapter 7 case styled *In re J.A.R. Concrete, Inc. d/b/a J.A.R. Construction, Inc.*, Case No. 23-30242-cgb (the "Bankruptcy Case"), which is currently pending in this Court. In accordance with Bankruptcy Rule 7004(b)(1), the Trustee may be served via first-class mail at his address of record in the Bankruptcy Case,

which is also the address from which he regularly conducts business: <u>Ronald E. Ingalls, P.O. Box 2867, Fredericksburg, Texas 78624-1927</u>.

3. JAR is a for-profit corporation formed under the laws of Texas. It is the debtor in the Bankruptcy Case.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157, and 2201. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(B) and 157(b)(2)(O).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a) because the Chapter 7 case to which this adversary proceeding relates is pending in this district. In addition, prior to its conversion to Chapter 7, the Bankruptcy Case was originally filed under Chapter 11 of the Bankruptcy Code. In accordance with an agreement between CRRMA and JAR (in its then-capacity as debtor and debtor-in-possession in the Bankruptcy Case), this Court on May 26, 2023 entered its *Agreed Order Granting Motion for Relief from the Automatic Stay for Cause Under 11 U.S.C. § 362(d)(1) With Respect to the Pellicano Drive Widening Project [Without Waiver of 30-Day Hearing Requirement]* [Bankr. Doc. No. 136] ("<u>Lift-Stay Order</u>") substantially granting the relief requested in CRRMA's Lift Stay Motion (as defined below). The Lift-Stay Order also further provided that "any suit under, arising out of, or related to the [Contract] by CRRMA or [JAR] and/or [JAR]'s bankruptcy estate to adjudicate and/or judicially determine any claims, rights, or obligations of the parties, the propriety and form of contract termination, amounts owed to [JAR] by CRRMA, if any, or pre-petition amounts owed to CRRMA by [JAR], if any, shall be brought in this Court, whether by separate adversary proceeding and/or by filing a proof

3

135712327v.8

of claim or an objection to such proof of claim, in accordance with the Bankruptcy Code, the [Bankruptcy Rules] and the Local Rules of this Court."

6. This adversary proceeding is commenced pursuant to Bankruptcy Rule 7001(2) and 7001(9), Bankruptcy Code § 105, the Lift-Stay Order, and the Declaratory Judgment Act.

7. CRRMA consents to entry of a final order or judgment by this Court.

## FACTUAL BACKGROUND

### The Project

8. In October 2019, CRRMA invited contractors pre-approved by the Texas Department of Transportation (the "TxDOT") to submit sealed bids on the proposed *Pellicano Drive Widening Project* (TxDOT CSJ: 0924-06-534). This road-improvement project would widen Pellicano Drive east of the TX-375 Loop in El Paso. Specifically, the Project involved expanding Pellicano Drive from a two and four-lane road to a six-lane, divided roadway that would include, among other things, a median, bicycle lanes, pedestrian facilities, and substantial drainage improvements. This project would affect the portion of Pellicano Drive in east El Paso running from the TX-375 Loop to Darrington Road.

9. The image below depicts the approximate location and size of the Project.

135712327v.8



10. Following the public opening of the sealed bids according to the Transportation Code, TxDOT regulations, and other applicable state law, CRRMA reviewed the bids and accepted JAR's bid. In March 2020, CRRMA and JAR executed that certain *Contract*, dated as of March 18, 2020 (the "Contract"), pursuant to JAR's winning bid.[1]

11. Under the Contract, JAR promised to substantially complete the Project within 399 working days after the specified date to commence work provided in CRRMA's official "Notice to Proceed". That date was April 20, 2020. Because of weather delays and other issues resulting in change orders, however, the original 399-day completion period was extended by an additional 130 days. Therefore, the revised contractual completion date under the Contract was July 21, 2022.

---

[1] A copy of the Contract is attached as Exhibit "1".

5

135712327v.8

12. Unfortunately, by July 21, 2022, JAR had fallen far behind the expected completion schedule, the Project was still less than fifty percent complete, and JAR had failed to comply with multiple contractual specification requirements.

13. CRRMA cooperated with JAR to do everything that it reasonably could to assist JAR and push the project forward. For example, CRRMA regularly worked to expedite project payments to JAR even though JAR's payment applications consistently failed to comply with applicable legal requirements. CRRMA encouraged JAR to submit claims for additional time, yet JAR failed to submit a proper time-impact analysis substantiating those claims despite CRRMA's specifically instructing JAR on what was required. CRRMA was transparent with JAR regarding JAR's failures to furnish enough personnel and equipment to complete the Project in a timely manner and would regularly suggest that JAR needed to add forces to this Project. Nevertheless, between July 21, 2022 and December 7, 2022, JAR failed to demonstrate any urgency to complete the Project, and the very slow pace of progress continued with seemingly no end in sight.

**CRRMA's Notice of Default & The Default Process**

14. Faced with this difficult circumstance, CRRMA issued a *Notice of Intent to Default* ("Intent to Default") to JAR on December 7, 2022 identifying six deficiencies in JAR's performance and demanding specific corrective action within ten days after JAR received the Intent to Default.[2] These six issues were identified by the Engineer,[3] Atkins

---

[2] A copy of the Intent to Default is attached as Exhibit "2".

[3] The "Engineer" is defined in the Contract as "The Professional Engineer licensed in Texas who represents the interests of the Owner." *See* Standard Specifications, Art. 1L 3.53. The parties dispute who the Engineer is under the Contract. JAR contends that CEA Engineering Group, Inc. is the Engineer, even though CRRMA, CEA, and Atkins all believe it is Atkins and Atkins performed the most, if not all, functions of the Engineer under the Contract.

6

135712327v.8

North America, Inc. ("Atkins"), in cooperation with CEA Engineering Group, Inc. ("CEA"), who is providing design services on the Project, and CRRMA. The criteria behind each of the six issues were that (1) they were important to advancing the Project, but (2) they were discrete tasks that JAR should have been able to fully complete within the ten-day cure period, provided that it had the desire to do so, along with the necessary personnel and equipment.

15. The Intent to Default notified JAR that CRRMA intended to default JAR under the Contract if JAR did not take these corrective actions within the required ten-day period, as provided under Article 8L.7 of the *Standard Specifications* (the "Standard Specifications") incorporated into the Contract.[4]

16. JAR responded to the Intent to Default in a letter dated December 19, 2022 ("JAR Response Letter").[5] Among other things, the JAR Response Letter acknowledged receipt of the Notice of Intent to Default and CRRMA's authority to declare a contractual default based on the notice. (JAR did not object to the notice being sent by CRRMA, rather than Atkins.) JAR did not request additional time to complete any of the six issues raised in the notice. But JAR did request additional time to complete the Project and raised various other issues with respect to its and CRRMA's performance under the Contract and decisions by CEA and Atkins. None of JAR's complaints, however, affected JAR's ability to cure any of the six items, nor did JAR claim that they did in the JAR Response Letter.

17. Nevertheless, even though it had no objection to the timing or scope of the Notice, JAR failed to complete all the corrective actions required by the Intent to Default

---

[4] A copy of the Standard Specifications is attached as Exhibit "3".
[5] An excerpted copy of the 12/19/22 Debtor Letter is attached as Exhibit "4".

7

within the required time period or ever. Significantly, JAR never addressed the safety issues raised by its failure to maintain traffic-control protocols. Instead, and by way of example only, it left barriers empty that must be filled with water to be effective; some of the barriers were in poor condition, having been damaged or lost reflectivity; and in other areas the barriers were missing completely. JAR's failure to address this particular issue is especially alarming, as it was impacting the safety of significant numbers of drivers, their passengers, and pedestrians who traverse the Project daily, which effectively has been a work zone for almost four years now. Further, JAR's efforts to place rebar for a concrete pour over a specified section were deficient because, among other things, JAR used apparently non-conforming rebar for what work it did, but it also did not even complete the section specified in the Notice of Intent. In summary, JAR's lackluster effort and inattention to detail indicated that JAR was unable to complete the required corrective actions and therefore the Project itself, and that CRRMA should exercise its contractual right to issue a notice of default for the benefit of the public.

18. Consequently, CRRMA sent a *Notice of Default and Claim Against Performance Bond* ("Notice of Default") to JAR on December 22, 2022.[6] This Notice of Default declared JAR in default of the Contract as of December 22, 2022. While the Notice of Default identified the two more obvious failures to complete corrective actions, CRRMA believes that there were other corrective actions that were not sufficiently completed that were not included. The intent was to identify and rely upon those failures that were so obviously incomplete as to avoid needless argument. Accordingly, the Notice of Default states that "The identification of those items above does not waive the right to claim

---

[6] A copy of the Notice of Default is attached as Exhibit "5".

deficiency or inadequate performance of other items set forth in the Notice of Intent to Default Letter." Additionally, as provided in the Contract, CRRMA sent a copy of the Notice of Default to the Surety, thereby asserting a claim against the Performance Bond. JAR's only recourse in response was to serve a written request on CRRMA asking it to reconsider the Notice of Default pursuant to Article 8L.8.

19. On January 9, 2023, JAR (through its counsel) submitted a *Notice of Claim for Wrongful Default* ("Wrongful Default Notice") to CRRMA.[7] This notice asserted that CRRMA's initial determination of default was wrongful and requested that CRRMA (pursuant to the contract and applicable state law) review whether the Notice of Default was, in fact, wrongful. CRRMA reviewed JAR's response and responded to the Wrongful Default Notice on January 30, 2023 by letter (the "CRRMA Determination Letter").[8] The CRRMA Determination Letter identified JAR's deficiencies that remained uncorrected and renewed CRRMA's determination that the Notice of Default was proper and that the Debtor's default under the Contract remained in full force and effect.

**Dispute Resolution Process & Engineer's Decision**

20. On February 9, 2023, JAR (through its counsel) submitted a *Notice of Claim* in which it reiterated its prior arguments regarding the allegedly wrongful finding of default and invoked the Contract's dispute resolution process.[9] Specifically, JAR asked for "CRRMA and the Engineer … to meet in an effort to resolve the dispute in accordance with the Dispute or Claims Procedure set forth in Article 4L.7 of the Contract Requirements."

---

[7] A copy of the Wrongful Default Notice is attached as Exhibit "6".
[8] A copy of the CRRMA Determination Letter is attached as Exhibit "7".
[9] A copy of the Notice of Claim is attached as Exhibit "8".

9

135712327v.8

21. With regard to the authority of the Engineer to make determinations of issues arising under the Contract, Article 5L.1 of the Standard Specifications expressly provides that "[t]he Engineer acts as a referee in all questions arising under the terms of the Contract. The Engineer's decisions will be final and binding." *See* Exhibit 3.

22. CRRMA agreed to facilitate the meeting among the parties and the Engineer. The parties' counsel exchanged agenda for the meeting and agreed that legal counsel for CRRMA and JAR would participate in the meeting. But JAR ultimately declined to participate in the dispute process that it had invoked because it claimed that CEA, not Atkins was the Engineer. Specifically, on August 8, 2023, which is the date the parties had set for the meeting, counsel for JAR wrote to counsel for CRRMA declining to participate in the meeting.

23. CRRMA and the Engineer proceeded with the meeting as scheduled, in hopes that JAR and its attorney would attend, but they did not. On August 16, 2023, Atkins, as the Engineer, issued a letter to the parties containing the following three decisions:

- "Atkins is the Owner's authorized Engineer for the Project."
- "CRRMA substantially complied with the contractual default process."
- "[T]he CRRMA's default of J.A.R. Construction, Inc. was proper and for cause."[10]

**The Performance Bond**

24. As mandated by law, TxDOT regulations, and the applicable bid requirements, JAR obtained a *Performance Bond* (Bond No. 6131006874) (the "Performance Bond") with the Surety.[11]

---

[10] A copy of the August 16, 2023 Letter from Atkins to CRRMA is attached as Exhibit "9".
[11] A copy of the Pellicano Performance Bond is attached as Exhibit "10".

25. CRRMA has made a demand on the Surety under the Performance Bond.[12] To date, the Surety has neither accepted nor denied CRRMA's claim under the Performance Bond. Instead, it has been the Surety's position that for so long as JAR has an actual or potential claim for wrongful default, then the Surety has no duty to respond under the bond. CRRMA disputes the Surety's position; nevertheless, it is imperative that the issue of whether the default under the Contract is for cause or convenience be determined as promptly as possible, so that the Project can proceed accordingly and the citizens of El Paso may see relief from this stalled project.

**The JAR Bankruptcy Case**

26. On March 14, 2023 (the "Petition Date"), JAR filed a voluntary petition under Chapter 11 in this Court, thereby commencing the Bankruptcy Case as a Chapter 11 bankruptcy case.

27. On May 5, 2023, CRRMA filed its *Motion for Relief from the Automatic Stay for Cause Under 11 U.S.C. § 362(d)(1) With Respect to the Pellicano Drive Widening Project [Without Waiver of 30-Day Hearing Requirement]* [Bankr. Doc. No. 97] ("Lift-Stay Motion") in the Bankruptcy Case. The Lift-Stay Motion sought relief from this Court so that, among other things, the Contract's dispute-resolution process (which JAR had initiated) could continue and CRRMA could further exercise CRRMA's rights under the Contract, the Performance Bond, TxDOT regulations, and applicable law, notwithstanding the existence of the automatic stay in the Bankruptcy Case under Bankruptcy Code § 362.

28. This Court on May 26, 2023 entered the Lift-Stay Order substantially granting the relief requested in the Lift Stay Motion and providing that any suit arising out

---

[12] *See* Exhibit "5".

11

135712327v.8

of or related to the Contract should be brought in "this Court, whether by separate adversary proceeding and/or by filing a proof of claim or an objection to such proof of claim, in accordance with the Bankruptcy Code, the [Bankruptcy Rules] and the Local Rules of this Court."[13]

29. CRRMA timely filed *Proof of Claim No. 72* (the "Proof of Claim") in the Bankruptcy Case on May 23, 2023 asserting, among other things, all CRRMA's rights, claims, and interests against JAR and JAR's bankruptcy estate under, *inter alia*, the Contract, the Performance Bond, TxDOT regulations, and applicable law.[14]

30. On September 12, 2023, this Court converted the Bankruptcy Case from a case under Chapter 11 of the Bankruptcy Code to a case under Chapter 7 [Doc. No. 382]. Mr. Ronald E. Ingalls was appointed as Chapter 7 trustee for JAR's bankruptcy estate on that same date. Mr. Ingalls continues to serve as the Chapter 7 trustee for JAR's bankruptcy estate as of today's date.

### JAR's Claims of Wrongful Default

31. In addition to the correspondence from JAR discussed above, on December 6, 2023, the Trustee sent a letter in which he stated that he, in his capacity as Chapter 7 trustee of JAR's bankruptcy estate, was submitting "its final notice of claim" against CRRMA. The majority of the letter asserts claims for damages for a litany of alleged wrongs. CRRMA disputes those claims and will address them in the appropriate forum.

---

[13] A copy of the Lift Stay Order is attached as Exhibit "11".
[14] A copy of the Proof of Claim is attached as Exhibit "12".

135712327v.8

But a portion of the letter challenges CRRMA's default determination on substantive and procedural grounds[15] that makes the relief requested herein all the more necessary.

## DECLARATORY RELIEF SOUGHT

32. Pursuant to the Declaratory Judgment Act, Bankruptcy Code § 105, Bankruptcy Rules 7001(9) and 7001(2), and the Lift-Stay Order, CRRMA asks the Court to enter a declaratory judgment as to the declarations requested below. CRRMA seeks this declaratory relief in addition to the claims it has asserted through the claims process (including, among other things, by filing the Proof of Claim), in the underlying Bankruptcy Case. Pursuing declaratory relief in addition to other relief is permissible in this matter to determine the respective interests of CRRMA and JAR's bankruptcy estate in the Contract and is expressly contemplated under, and authorized by, the Lift-Stay Order. FED. R. BANKR. P. 7001(2), 7001(9); Lift-Stay Order, Exhibit 11, p. 2.

33. Declaratory relief is proper in that this controversy is of a justiciable nature, not merely advisory, and will resolve the existence or nonexistence of rights and duties under the Contract as between these parties. 11 U.S.C. § 105; 28 U.S.C. § 2201; FED. R. BANKR. P. 7001(2), 7001(9).

34. CRRMA requests the following declaratory relief:

   i. **Declaration One**: Atkins North America, Inc. is the "Engineer" as that defined term is used in the Contract.

   ii. **Declaration Two**: Atkins' determinations that "CRRMA substantially complied with the contractual default process" and that "the CRRMA's

---

[15] The Trustee's complaints regarding the default determination differ somewhat from the JAR's prior complaints. The Trustee asserts the default was improper because (1) "it was based on immaterial, unsupported and pretextual cure items;" (2) JAR cured the defects to the extent possible; (3) "CRRMA ignored the Project's ongoing design issues;" (4) CRRMA did not follow TxDot default procedures; (5) TxDot did not concur in the default decision; and (6) JAR did not receive "an appropriate hearing under Texas law."

135712327v.8

default of J.A.R. Construction, Inc. was proper and for cause" are final and binding on the parties.

iii. **Declaration Three** (in the alternative, if the Court does not enter Declaration Two): CRRMA substantially complied with the contractual default process or JAR waived any defects in the process by not timely objecting.

iv. **Declaration Four** (in the alternative, if the Court does not enter Declaration Two): CRRMA's default of JAR was proper and for cause under the Contact.

## **PRAYER**

**WHEREFORE,** Camino Real Regional Mobility Authority requests that the Trustee, solely in his capacity as the Chapter 7 trustee of the bankruptcy estate of J.A.R. Concrete, Inc. d/b/a J.A.R. Construction, Inc. and not in his individual capacity, be cited to appear and answer herein, and that upon final disposition of this matter CRRMA be awarded the declaratory relief that it has requested above and any and all further relief to which it may be entitled.

Dated: January 17, 2024

Respectfully submitted,

/s/ *W. Steven Bryant*
W. Steven Bryant
Texas State Bar No. 24027413
**LOCKE LORD LLP**
300 Colorado Street, Ste. 2100
Austin, Texas 78701
Telephone: (512) 305-4726
Fax: (512) 305-4800
Email: sbryant@lockelord.com

*-and-*

Philip G. Eisenberg
Texas State Bar No. 24033923
peisenberg@lockelord.com
Derrick B. Carson
Texas State Bar No. 24001847
dcarson@lockelord.com
Aditi Deal
Texas State Bar No. 24119780
aditi.deal@lockelord.com
**LOCKE LORD LLP**
600 Travis Street, Suite 2800
Houston, Texas 77002
Telephone: (713) 226-1200
Fax: (713) 223-3717

*Counsel to the Camino Real Regional Mobility Authority*

135712327v.8